## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**US CLAIMS OPCO LLC**,
**d/b/a US CLAIMS**,

    Petitioner,

Case No.: **8:15-cv-1638-T-30TBM**

v.

**ANTHONY ACOSTA**,

    Respondent.
_____/

## DEFAULT FINAL JUDGMENT
## AGAINST RESPONDENT, ANTHONY ACOSTA

This matter came before the Court upon the Petitioner's motion for entry of default final judgment (Dkt. 12). Petitioner, US Claims OPCO LLC, d/b/a US Claims ("**US Claims**"), sought relief pursuant to Fed. R. Civ. P. 55(b) and M.D. Fla. L.R. 1.08(b) and requested that the Court enter a default final judgment against Respondent, Anthony Acosta ("**Respondent**"), for failure to plead or otherwise defend. Having reviewed the motion filed by US Claims, reviewed the Court file, and being otherwise duly advised in the premises, the Court does hereby find the following:

### FACTS

1. This is an action for confirmation of an arbitration award.

2. On or about December 12, 2014, Respondent was involved in an accident that gave rise to a negligence claim against United Rental North America, Inc. (the "**Negligence Lawsuit**").

3. On or about April 11, 2013, Respondent executed a Purchase Agreement (the "**Purchase Agreement**") and agreed to sell an interest in the anticipated proceeds from the Negligence Lawsuit to a California company, Funding for Lawsuits ("**FFL**"), which offered pre-settlement litigation funding.

4. On or about April 16, 2013, US Claims purchased FFL's interest in the anticipated proceeds from the Negligence Lawsuit for $48,461.60, and FFL assigned such interest to US Claims.

5. Respondent also sold additional interests in the anticipated proceeds from the Negligence Lawsuit directly to US Claims. Respondent sold these additional interests to US Claims according to the same terms and conditions as the Purchase Agreement.

6. The Purchase Agreement provided, among other things, that Respondent's counsel in the Negligence Lawsuit, David L. Kwass, would be instructed to pay US Claims from the proceeds he may receive in resolution of the Negligence Lawsuit. The Purchase Agreement also provided that the Parties would arbitrate all disputes, claims, defenses or controversies arising out of or relating to the Purchase Agreement and that Mr. Acosta would be liable to pay US Claims' attorney's fees and costs incurred in enforcing its rights.

7. The total purchase price received by Mr. Acosta for the interests he sold in the anticipated proceeds from the Negligence Lawsuit was $133,801.60. As a result of the transactions, if the Negligence Lawsuit was resolved favorably for Mr. Acosta, US Claims would be entitled to receive a payment equal to the principal investment (*i.e.,* the purchase price) plus the fees that accrued on the principal.

8. On or about April 25, 2014, following resolution of the Negligence Lawsuit, Attorney Kwass tendered a check to US Claims in the amount of $133,801.60, designating such amount as payment only of the principal amount due to US Claims.

9. Without providing any explanation, Attorney Kwass indicated to US Claims that, at the express direction of Mr. Acosta, he would hold the remainder of US Claims' interest in the escrow account of his law firm, Saltz Mongeluzzi Barrett & Bendesky, PC ("**SMBB**"). In other words, according to Mr. Acosta, US Claims was not entitled to the full benefit of its bargain under the Purchase Agreement.

10. US Claims filed a Demand for Arbitration (the "**Arbitration Demand**") with The Dispute Resolution Institute seeking to enforce its agreements with Mr. Acosta and the payment of the amounts still due thereunder.

11. On or about March 11, 2015, the matter was heard by the arbitrator appointed by The Dispute Resolution Institute, Judge A. Michael Snyder (Retired) (the "**Arbitrator**").

12. On or about March 13, 2015, the Arbitrator issued Mixed Findings of Fact and Conclusions of Law (the "**Decision**"), which found, among other things, that the Parties had agreed to submit the dispute to arbitration, that Mr. Acosta was served with the Arbitration Demand, that Mr. Acosta had failed to respond to the Arbitration Demand, and that US Claims was entitled to damages in the amount of $87,581.40.

13. On the same date, the Arbitrator also issued a separate Arbitration Award in favor of US Claims for $87,581.40.

14. After obtaining the Arbitration Award, US Claims again approached Mr. Acosta, through Attorney Kwass, and requested that it be paid from the proceeds that were still being held in escrow. Attorney Kwass represented that he was still holding some funds in escrow in connection with the Negligence Lawsuit (the "**Disputed Funds**"), which would partly cover the amounts due under the Arbitration Award. He also indicated that he was ready to send the Disputed

3

Funds to US Claims, but that Mr. Acosta was unwilling to execute a closing statement authorizing the release of the funds to US Claims (the "**Closing Statement**"). Mr. Acosta has taken no other steps to pay US Claims the amounts owed under the Arbitration Award.

15. US Claims retained counsel in the Arbitration, retained undersigned counsel in this action, and incurred legal fees in connection with the Arbitration and this action.

## PROCEDURAL HISTORY

16. On July 13, 2015, US Claims filed a Petition to Confirm Arbitration Award, for Final Judgment, and for Related Relief (the "**Petition**") (D.E. No. 1). *See* Affidavit of Richard J. Mockler in Support of Petitioner's Motion for Default Judgment (the "**Mockler Affidavit**") at ¶ 3.

17. On or about July 21, 2015, Mr. Acosta was served with a summons and the Petition. *See* Affidavit of Service filed on August 28, 2015 (D.E. No. 7). *See* Mockler Affidavit, ¶ 4.

18. Respondent did not file a timely response to the Petitioner as required by Rule 12 of the Federal Rules of Civil Procedure, thereby failing to plead or otherwise defend against this action. *See* Mockler Affidavit, ¶ 5.

19. As a result of Respondent's failure to plead or defend, the Clerk of Court entered a default against Respondent on September 1, 2015. (D.E. No. 10). *See* Mockler Affidavit, ¶ 6.

20. Since the Clerk's Default was entered, Respondent has not filed or served any response to the Petition. *See* Mockler Affidavit, ¶ 7.

21. Respondent is not entitled to any protection under the Servicemember's Civil Relief Act, 50 U.S.C. App. §§ 501 – 597b. *See* Petitioner's Affidavit of Non-Military Service (D.E. No. 11).

22. Based on the foregoing, US Claims requested the entry of a default final judgment

granting the following relief:

    a.    Confirming the Arbitration Award;

    b.    Granting money judgment in favor of US Claims and against Respondent for the amount of $87,581.40, plus any applicable legal interest;

    c.    Determining that US Claims is entitled to an award of reasonable attorney's fees and costs against Respondent pursuant to the terms of the Purchase Agreement; and

    d.    Determining that US Claims is entitled to be paid from the Disputed Funds and requiring Mr. Acosta to execute the Closing Statement releasing the Disputed Funds to US Claims.

### CONCLUSIONS OF LAW

23.    On a motion for default judgment under Rule 55(b)(2) of the Federal Rules of Civil Procedure, the Court accepts as true the facts alleged in the petition.

24.    The defaulting party is deemed to have admitted all well-pleaded allegations of fact for purposes of liability. *See Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987); *see also Coton v. Televised Visual X-Ography, Inc.*, 740 F. Supp. 2d 1299, 1307 (M.D. Fla. 2010); *Tyco Shandong Airlines Co. v. CAPT, LLC*, 650 F. Supp. 2d 1202, 1206 (M.D. Fla. 2009).

25.    If the allegations of fact establish the defaulting party's liability, the moving party is entitled to relief against the defaulting party. *See Shandong Airlines*, 650 F. Supp. 2d at 1206.

26.    Pursuant to Fed. R. Civ. P. 54(c), the relief awarded must not differ in kind from, or exceed in amount, what is demanded in the operative pleading. *See Rasmussen v. Cent. Fla. Council Boy Scouts of Am., Inc.*, No. 10-12238, 2011 WL 311680, at *2 (11th Cir. 2011).

27. In this matter, Respondent was a party to the Negligence Lawsuit.

28. Respondent executed the Purchase Agreement and sold an interest in the anticipated proceeds from the Negligence Lawsuit to ("**FFL**"), who later transferred that interest to US Claims.

29. Respondent also sold additional interests in the anticipated proceeds from the Negligence Lawsuit directly to US Claims.

30. The Purchase Agreement provided, among other things, that Respondent's counsel in the Negligence Lawsuit, David L. Kwass, would be instructed to pay US Claims from the proceeds he may receive in resolution of the Negligence Lawsuit. The Purchase Agreement also provided that the Parties would arbitrate all disputes, claims, defenses or controversies arising out of or relating to the Purchase Agreement and that Mr. Acosta would be liable to pay to US Claims' attorney's fees and costs incurred in enforcing its rights.

31. The total purchase price received by Mr. Acosta for the interests he sold in the anticipated proceeds from the Negligence Lawsuit was $133,801.60. As a result of the transactions, US Claims was entitled to receive a payment equal to the principal investment (*i.e.,* the purchase price) plus the fees that accrued on the principal.

32. On or about April 25, 2014, following resolution of the Negligence Lawsuit, Attorney Kwass tendered a check to US Claims in the amount of $133,801.60, designating such amount as payment only of the principal amount due to US Claims.

33. Attorney Kwass inexplicably held the remainder of US Claims' interest in the escrow account of his law firm, SMBB.

34. In other words, US Claims did not receive full benefit of its bargain under the

6

Purchase Agreement.

35. US Claims filed its Arbitration Demand seeking to enforce its agreements with Mr. Acosta and the payment of the amounts still due thereunder.

36. On or about March 11, 2015, the matter was heard by the Arbitrator, who issued the Decision finding, among other things, that the Parties had agreed to submit the dispute to arbitration, that Mr. Acosta was served with the Arbitration Demand, that Mr. Acosta had failed to respond to the Arbitration Demand, and that US Claims was entitled to damages in the amount of $87,581.40.

37. The Arbitrator also issued an Arbitration Award in favor of US Claims for $87,581.40.

38. After obtaining the Arbitration Award, US Claims again approached Mr. Acosta, through Attorney Kwass, and requested that it be paid from the proceeds that were still being held in escrow. Attorney Kwass represented that he was still holding the Disputed Funds in escrow, which would partly cover the amounts due under the Arbitration Award. Attorney Kwass also indicated that he was ready to send the Disputed Funds to US Claims, but that Respondent was unwilling to execute the Closing Statement authorizing the release of the funds to US Claims.

39. Respondent did not pay US Claims the amounts owed under the Arbitration Award.

40. These well-pleaded allegations establish that Respondent is liable to US Claims for the amount of the Arbitration Award.

41. Accordingly, the Arbitration Award should be confirmed, and the Court should determine that US Claims is entitled to the Disputed Funds that are held in escrow by Attorney Kwass and SMBB, and to the extent that SMBB still will not release the Disputed Funds, Respondent should be ordered to execute a closing statement releasing the Disputed Funds up to the amount of the Arbitration Award.

Based on the foregoing, the Court does hereby **ORDER** and **ADJUDGE** the following:

A. Petitioner's motion for entry default final judgment against Respondent Anthony Acosta (Dkt. 12) is GRANTED.

B. The Arbitration Award is hereby CONFIRMED.

C. Petitioner, US Claims, is hereby granted judgment in its favor and against Respondent, Anthony Acosta, for the sum of **$87,581.40**, for which sum let execution issue.

D. US Claims is entitled to disbursement of any funds up to the amount of the Arbitration Award held by Saltz Mongeluzzi Barrett & Bendesky on behalf of or for the benefit of Anthony Acosta, and any such amount received shall apply, in whole or in part, to satisfy this Judgment.

E. To the extent that Saltz Mongeluzzi Barrett & Bendesky fails to release funds held on behalf of or for the benefit of Anthony Acosta, Respondent is ordered to sign any closing statement authorizing release of the funds held by Saltz Mongeluzzi Barrett & Bendesky, PC, up to but not exceeding the lesser of the amount due under the Arbitration Award or the amount due to satisfy this Judgment.

F.     Any motion for an award of fees shall be filed within thirty (30) days from the date of this Judgment.  The motion shall attach the Purchase Agreement that US Claims contends entitles it to an award of fees and costs in this matter.

G.     This Court will retain jurisdiction of this matter for no more than one (1) year from the date of this Judgment to enforce its terms.

H.     The Clerk is directed to enter this Default Final Judgment and, thereafter, shall close this case.

**DONE** and **ORDERED** in Tampa, Florida, this 25th day of September, 2015.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record